Right, is Mr. Williams in the courtroom? Then we'll hear from the government. So you filed a motion because Mr. Williams is currently in fugitive status? I did. I filed a motion to dismiss under the Fugitive Disentitlement Doctrine. And he's never reported, which I imagine is why he's not here today. And this is parole from a different crime than the one he was held on from which this suit arises, correct? I'm sorry, I can't hear you. Okay, this is a subsequent conviction and parole, and it's not the same one from which his action arises. I would guess it depends on how you look at it. It's not the parole from his first-degree burglary charge which subjected him to the DNA statute. It is his parole, though, from the second-degree burglary charge, which is the incarceration where they took his DNA. So he eventually voluntarily surrendered his DNA. He was released. He was put on parole, and he never checked in. Never? Never. Yet he filed this action. Yes, he did. Yeah. Okay. So there's a couple things we can do. We can dismiss this case because under the Fugitive Entitlement Doctrine, he really shouldn't be entitled to pursue this case when he's not conforming to the processes. Or it may be in the government's interest to condition, which we also have case law that supports, to condition his being able to pursue this action on coming in and answering to the warrant for his arrest. What do you think would be the best outcome? I mean, if we did issue an order doing that, you might catch him. Right. I think part of the problem that happens is the Department of Corrections has so few resources that they can't go out there and actively track down these people. And even when he was arrested in Las Vegas, I think it was about a year ago, and California asked Las Vegas to not release him, Las Vegas still did. So my request would be that it's dismissed. He has completely ignored any of his even parole requirements. So he shouldn't now be able to come and ask the state government for help. Counselor, let me ask you a question. The cases you've cited all relate to criminal matters on your motion to dismiss. This is not a criminal matter. This is a civil matter, a 1983 case filed by a prisoner. Why do these have any effect on a 1983 case? Well, Your Honor. Give me one case that says they do. Your Honor, I actually didn't bring the motion with me, unfortunately. But as I recall, there was a case that did talk about it applying to civil matters. Although, Your Honor, I do agree with you that the majority of the cases do involve someone appealing a criminal conviction and then they usually leave the country. They leave Idaho or the country. I'm from Idaho, and I remember my criminals leaving Idaho and taking off to California. We could never find them. And so, therefore, in those instances, of course, we had to dismiss their criminal appeals. But this is not that case. This is a civil case. It's a civil case based on what the state might have done in a particular incarceration. So I'm trying to find the case when you filed the motion which would give me the opportunity to say, right, there's the case. It says that it applies in a 1983 case. Otherwise, I've got to go forward with the case whether he's here or not. Judge Smith makes a really good point because the case law is really clear that there has to be some kind of relationship between the benefit the fugitive is seeking from the government and the fugitive status, and there doesn't seem to be that nexus here. Right. I did see that as a weakness. May I jump in and answer Judge Smith's question? You can answer my question. We have a memorandum disposition in 1995, Atalano v. Gilbert, which was dismissal under Atalano's 1983 case asserting various constitutional violations. He was a fugitive on a misdemeanor drunk charge. But that's a pre-2007 mem dispo which is not citable. Well, generally not something outside. May I take a look and see if that case cites some other cases? Absolutely. I will, Your Honor. The problem is, okay, if we he's not here. Just I'll tell you my personal perspective is I think he did state enough to state a claim and that it was dismissed, the case was dismissed prematurely by the district court because right in his complaint he does say that he was held, he was over-detained past his release date for the purposes of the DNA test, which is not a proper purpose. So that's enough to get past in our liberal pleading standards, Rule 12b-6. Well, Your Honor, if I can address the six days. Really my perspective, and I think the cases show, that quite a few of these cases have that wording in there. It's a timing mechanism essentially to ensure compliance. Without that in there, we end up in a situation like in Kincaid where he's released on parole, and then we have the situation that we have today where he never checks in, and now he's no longer subject to the statute. We can't get him. So it's really a timing mechanism to ensure compliance. It's not punishment per se. Let me stop you just a minute. It seems to me that in this particular case we're looking at a 2000 statute, and under the 2000 statute California didn't have any right to extract DNA from the guy who they'd already paroled. He was in on another crime for which DNA did not need to be extracted, and California held him on the second crime, which was not subject to the statute, and extracted the DNA after he could have been paroled. That's the state of the evidence. Now tell me, how does the California Department of Corrections have any idea that they can extract DNA out of someone after the guy's already been paroled on the first crime for which it could have been extracted? Because the statute doesn't give them that authority. Well, Your Honor, I understand what you're saying, but I respectfully disagree. I think the statute actually does include if they've ever been convicted of a qualifying offense. Well, but if you read the statute, and maybe I ought to read it to you, it says, but in any case, prior to physical release from custody, he was released. He was off parole. He was not even in the prison. He'd been not only released not on probation, but he was released from the parole afterwards, and then comes in on a crime that doesn't qualify, and then has to give his DNA. That's the statute in 2000. We're not looking at the 2004 statute, which changes it. It says any time you come back, we can get it to you again. We're looking at the 2000 statute. Well, Your Honor, my understanding is that the statute actually did say that any time that they have a qualifying offense, it has to be taken, but that it didn't specify necessarily on this incarceration. I guess you'd have to show me in your brief or in the statute where that is, because I read through every bit, and I could not find anything except prior to physical release from custody, and I underlined it several times. So that's a worry. My second worry is this. Where does he allege in anything that he has that this is any more than a respondeat superior claim against the Department of Corrections director? Do you find it? I can't. I think that he is looking at Alameda as the policymaker, and that's why he's sued him. Let me ask you a second question. How many times was he allowed to amend? Do you remember? I believe this was his fourth amended complaint. Fourth amended complaint. In other words, the district judge who had this person in front of him gave him three times to try to amend to assert a claim against the appropriate individual and say the appropriate things in his amendment. That's right. And, again, this is a civil action. That's correct. Thank you, Counselor. I have no other questions. Your Honor, I also believe this is a perfect case for qualified immunity. I certainly think Mr. Alameda wouldn't have had any fair warning that this particular plaintiff was exempt from this statute when California courts have upheld this statute when every State in the Union. Right. But the problem that I see with it is that he was the over-detention. That he had a release date, and he should have been released. And that detaining him for a period of time longer than what he was required to serve is the violation. Now, he may have sued the wrong party. I have to go back and look. I don't know if he sued just the warden or the State, but he sued the department. He sued the director of the department. Did he sue the department as well? No, just the director. And, in fact, one of the things he asked for is injunctive relief of destroying his DNA sample, and the Department of Corrections doesn't even have that. That's the Department of Justice that would have that. And on what basis did the district court dismiss his action? Based on rise in Kincaid. It said it was precluded. So it didn't really dismiss based on the failure to name the correct party? No, but this court has discretion to dismiss on any basis in the record. And I would say, based on respondeat superior as well as qualified immunity, that it would be a waste of judicial resources to send it back. I also think that just policy-wise, if you start differentiating who is, you know, what is considered a qualifying offense at this point, it becomes difficult, I think, to actually put that into place in the Department of Corrections. Well, I think Judge Smith and I are seeing different claims. I'm seeing an over-detention claim, which we have a lot of, many of those type of cases. He's seeing an attempt to get the DNA under a statute that didn't authorize it. I understand. And certainly with over-detention, Alameda is still the wrong party. Alameda wasn't involved in that. But he would be the right party if he was the one who detained him, if he was the one who wouldn't let him be released. We've had a case like that, the Goldstein case. I believe, though, that it has to be somebody who was involved in that, and that certainly wouldn't have been Alameda as the director. But this is a motion to dismiss, so we have to take the complaint as stating true facts, right? That's correct. And he alleged that Alameda is liable because of his policy practice and or procedure and his specific direction. But, Your Honor, I understand what you're saying, but I would also say that conclusory allegations aren't enough. There has to be more than that, some actual facts and cases. No, no, no, no, no, not on a motion to dismiss. I think you've given us a lot to think about, and we should just submit this case and figure out what would be the most appropriate avenue to pursue. Thank you, Your Honor. Thank you. Williams v. Alameda will be submitted.
judges: Wardlaw, Bea, Smith